PRADO, Circuit Judge:
This is an appeal from a district court’s order granting summary judgment on an employee’s claims of sexual harassment and retaliation under Title VII. For the reasons that follow, we AFFIRM IN *385 PART and REVERSE IN PART the district court’s decision and REMAND for further proceedings consistent with this opinion.
I. FACTUAL BACKGROUND
Plaintiff-Appellant Rene LeMaire (“Le-Maire”) began working as a Bridge Operator 2 for Defendanb-Appellee State of Louisiana, Department of Transportation and Development (“LaDOTD”) in March 2001. His job consisted of operating power-driven drawbridges and performing or overseeing preventative maintenance on the drawbridges. Milton Endres (“Endres”) was the Bridge Operator Foreman, and Rodney Jones (“Jones”) was an Engineering Technician. Both held supervisory roles over LeMaire.
In November 2001, LeMaire and his friend Mitzi Doiron (“Doiron”), who was dropping him off at work, ran into Endres. Doiron had known Endres for years, and they began to talk. According to Doiron; Endres told them that he had been molested as a child, that he had molested Doi-ron’s ex-husband when he was a child, and that Doiron’s ex-husband had not always been opposed to the molestation. Endres further elaborated on his sex life with his wife, how he enjoyed being close to other men, and his gay friends, who had- also been molested. Doiron and LeMaire asked Endres to stop talking about these issues and tried to change the topic of conversation, but to no avail.
Doiron further states in her affidavit that LeMaire told her in February 2002 that Endres told him about being with gay men who were having sex at Mardi Gras. LeMaire was very upset about having to listen to Endres’ sexually oriented comments.
On June 15, 2002, LeMaire claims he was subjected to derogatory comments by Endres. Endres also allegedly told Le-Maire that he (Endres) would make it impossible for LeMaire to transfer, so the only way LeMaire could get away would be to quit. Endres then ordered LeMaire to spray herbicide on a large area of the bank and lawn. Believing this order was in retaliation for having objected to En-dres’ sexually explicit stories, LeMaire left the job site to report the conduct to Jones.
LeMaire told Jones, who was Endres’ supervisor, about the harassment and retaliation and that he intended to quit. Jones persuaded LeMaire to stay on and to file a grievance alleging “unfair/unjust treatment” instead of a formal complaint of sexual harassment. On June 18, 2002, LeMaire received a letter from Jones concluding that, after investigation, there was no “conclusive evidence” of misconduct by Endres and that Endres had been told to act in a professional and courteous manner. On June 28, 2002, LeMaire was suspended for two days without pay by Terri Robison, District Maintenance Engineer, for refusing to spray herbicide as directed by Endres and for leaving the station without authorization. The letter, however, states that the incident occurred on April 15, 2002, even though affidavits from both parties put the event on June 15, 2002.
Endres claims that, on July 19, 2002, he found LeMaire asleep in the swing bridge house. LeMaire asserts that he was not asleep and was sitting up and working when Endres burst in on him. Several co-employees of LeMaire stated that LeMaire told them he was concerned that Endres had caught him sleeping on the job. Le-Maire denies admitting to his co-employees that he was sleeping.
On July 25, 2002, Rhonda Boudreaux, an LaDOTD employee, reported that one of the bridges was unmanned. LeMaire admits that the bridge was his responsibility and that he had accidentally overslept by *386 four hours. By the time he got in, a replacement had filled his spot, and En-dres told LeMaire to mow the grass around the bridge instead. LeMaire refused. He asserts that it was raining so hard that day that mowing would have been impossible.
LeMaire was suspended for thirty days with pay beginning August 5, 2002, pending an investigation into his conduct. On August 6, 2002, LeMaire received a letter from Terri Hammack (“Hammack”)[1] informing him that Hammack was recommending him for termination. The grounds for termination included sleeping on the job on July 19, being late on July 25, and refusing to mow the grass on July 25. The letter also noted LeMaire’s prior two-day suspension for insubordination and leaving without authorization. A meeting was set for August 13, 2002, to give LeMaire an opportunity to respond to these allegations.
LeMaire and his attorney attended the meeting on August 13, at which time Le-Maire presented an affidavit refuting the grounds for his termination. On August 15, 2002, Hammack again wrote to Le-Maire to inform him that he would be terminated for the same reasons stated in the August 6 letter.
II.PROCEDURAL HISTORY
LeMaire filed suit against LaDOTD on October 10, 2003, asserting claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3 (2000), as well as assault and intentional infliction of emotional distress under Louisiana state law. LaDOTD filed a motion to dismiss, which was denied by the district court. LaDOTD then filed a motion for summary judgment on October 8, 2004. In a single page order on October 6, 2005, the district court summarily granted LaDOTD’s motion, stating that “written reasons” for its decision would be “filed at a later date.” Written reasons have never been filed, and LeMaire appealed the district court’s order on November 4, 2005. LeMaire has appealed only his Title VII claims. As a result, we do not consider his state law claims of assault and intentional infliction of emotional distress.
III. JURISDICTION
Although no judgment has ever been entered in this case, we have jurisdiction over this appeal under 28 U.S.C. § 1291. Pursuant to Rule 58(a) of the Federal Rules of Civil Procedure, a judgment following an order on a summary judgment motion must be set forth in a separate document. However, if a separate judgment is required but not entered, judgment is deemed entered 150 days after the order. Fed.R.Civ.P. 58(b)(2)(B). In this case, then, judgment was deemed entered 150 days after October 6, 2005, which was March 5, 2006. Although LeMaire filed his appeal before that date, Rule 4(a)(2) of the Federal Rules of Appellate Procedure provides that an appeal filed after a court’s order but before the entry of judgment is treated as filed on the date of and after the entry of judgment. Therefore, we deem final judgment entered and LeMaire’s appeal timely filed. As a result, we have jurisdiction over this appeal.
IV.DISCUSSION
We review a district court’s order granting summary judgment de novo. Morris v. Equifax Info. Servs., L.L.C., 457 F.3d *387 460, 464 (5th Cir.2006). Summary judgment is appropriate when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Fed. R. Civ. P. 56(c); Bulko v. Morgan Stanley DW, Inc., 450 F.3d 622, 624 (5th Cir.2006). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, all facts and evidence must be taken in the light most favorable to the non-movant. United Fire & Cas. Co. v. Hixson Bros., Inc., 453 F.3d 283, 285 (5th Cir.2006). However, to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. Piazza’s Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir.2006).
Complicating our review of this case is the fact that the district court gave no reasons for its decision. While findings of fact and conclusions of law are not necessary, as our review is de novo, we have emphasized in the past that such findings and conclusions are “often quite helpful for appellate review.” Thomas v. N.A. Chase Manhattan Bank, 994 F.2d 236, 241 n. 6 (5th Cir.1993) (internal quotation marks omitted). Indeed, in this case, such an analysis would have been beneficial as the pleadings and arguments of the parties are less than clear. However, because our review is not limited to the district court’s analysis, we may affirm the district court’s decision on any basis presented to the district court. Id. at 241. We, therefore, turn first to LeMaire’s sexual harassment claims.

A. Sexual Harassment

LeMaire asserts that the district court erred in granting LaDOTD’s motion for summary judgment on his sexual harassment claims because he created a genuine issue of material fact regarding whether Endres had sexually harassed him. As noted in the previous section, we may only affirm an order granting summary judgment on a basis that was presented to the district court. See id. This is in keeping with our precedent that arguments not raised before the district court are waived and cannot be raised for the first time on appeal. See Tex. Commercial Energy v. TXU Energy, Inc., 413 F.3d 503, 510 (5th Cir.2005), cert. denied, — U.S. —, 126 S.Ct. 1033, 163 L.Ed.2d 855 (2006). We therefore consider LaDOTD’s motion for summary judgment.
The only argument regarding sexual harassment raised in LaDOTD’s motion is to simply deny that Endres made the allegedly offensive comments and include affidavits from other LaDOTD employees stating that Endres never made inappropriate remarks to them.[2] LeMaire’s evidence on this point consists of affidavits from himself and Doiron describing the alleged sexually harassing comments made by Endres. With this evidence, LeMaire has clearly created a genuine issue of ma *388 terial fact regarding whether or not the allegedly harassing conversations took place. Therefore, the district court’s decision to grant summary judgment on Le-Maire’s sexual harassment claims was erroneous, and we must reverse it.
The dissent in this case would affirm the district court because (1) there was no evidence that the harassment was because of LeMaire’s sex under the same-sex harassment standard; and (2) there was no evidence that the harassment was severe and pervasive enough to constitute a hostile working environment. LaDOTD’s motion for summary judgment, however, never raised those issues. Our precedent is clear that “[s]imply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case.” Russ v. Int’l Paper Co., 943 F.2d 589, 591 (5th Cir.1991) (per curiam).
Here, LaDOTD did not mention “same-sex harassment” or “hostile work environment” in its motion for summary judgment. Instead, it filed a bare-bones motion that failed to cite to any legal precedent or standards regarding sexual harassment. This is insufficient to put LeMaire on notice that he needed to produce evidence on those issues. While the dissent assumes that LeMaire has no further evidence to support those elements of his claim, we cannot do so because Le-Maire was never under an obligation to produce such evidence. Therefore, we must reverse this portion of the district court’s decision.[3]
ll. Retaliation
We next address LeMaire’s retaliation claim. Pursuant to Title VII, an employer may not discriminate against an employee because the employee has “opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing” under Title VII. 42 U.S.C. § 2000e-3. Retaliation claims under Title VII are governed by the familiar three-step McDonnell Douglas test. Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir.2005); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that test, an employee bringing a retaliation claim must first produce evidence of a prima facie case of retaliation. Septimus, 399 F.3d at 608. To establish a prima facie case of retaliation, an employee must demonstrate that (1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment' action. Harvill v. Westward Commc’ns, L.L.C., 433 F.3d 428, 439 (5th Cir.2005). If the employee establishes a prima facie ease, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. Baker v. Am. Airlines, Inc., 430 F.3d 750, 754-55 (5th Cir.2005). After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer’s reason is *389 actually a pretext for retaliation. Id. at 755.
After combing through the record in this case, we have identified four different allegations of retaliation raised by LeMaire: (1) Endres’ order to spray herbicide on June 15, 2002; (2) other acts of retaliation referenced generally by LeMaire, but not specifically identified; (3) LeMaire’s two-day suspension without pay; and (4) LeMaire’s termination. We now consider how these claims fare under the McDonnell Douglas burden-shifting analysis.

1. Order to Spray Herbicide

In his affidavit in response to La-DOTD’s motion for summary judgment, LeMaire claims that Endres ordered him to spray herbicide on June 15, 2002, in retaliation for LeMaire’s rejection of En-dres’ sexual advances. To satisfy his prima facie obligation, LeMaire must produce evidence that he engaged in a protected activity. See Harvill, 433 F.3d at 439. At the time of Endres’ order, LeMaire had not yet complained to Jones of Endres’ conduct, so the only arguable protected activity was LeMaire’s actual rejection of Endres’ advances. LeMaire, however, provides no authority for the proposition that rejecting sexual advances constitutes a protected activity for purposes of a retaliation claim under Title VII. See Frank v. Harris County, 118 Fed.Appx. 799, 804 (5th Cir.2004) (unpublished) (affirming summary judgment on retaliation claim when only protected activity was “express rejection” of sexual advances). We, therefore, affirm the district court’s order granting summary judgment to the extent that LeMaire argues that Endres’ order to spray herbicide was retaliatory.[4]

2. Other Acts of Retaliation

Throughout his complaint, affidavit, and briefing, LeMaire makes vague references to other actions taken by Endres in retaliation for LeMaire’s protected conduct. (See LeMaire Compl. ¶ 7(3); LeMaire Aff. ¶ 3 [stating Endres retaliated by assigning LeMaire to “numerous unpleasant duties” outside of LeMaire’s job description and requiring LeMaire to work multiple shifts at different bridge locations]; Doiron Aff. at 5 [stating Endres gave LeMaire all the “hard and dirty jobs”].) The parties failed to conduct any discovery, so it is unclear to what specific actions LeMaire is referring.
LaDOTD did not move for summary judgment on these other acts of retaliation in its motion for summary judgment nor did it reference them on appeal; therefore, LaDOTD cannot be entitled to summary judgment on those issues.[5] Further, because the district court did not issue a written opinion explaining its reasons for granting summary judgment, we do not know if the district court considered these claims and, if it did, why the district court found them lacking. Given the new legal precedent, see Burlington Northern, 126 S.Ct. at 2414-15, the lack of summary judgment briefing, and the vagueness in the evidence, we reverse this portion of the *390 district court’s order and remand for further consideration.

S. Suspension Without Pay

The next alleged act of retaliation we consider is LaDOTD’s decision to suspend LeMaire for two days without pay for refusing to spray herbicide as ordered by Endres and leaving the job site. Le-Maire has satisfied his prima facie case in this instance. His report to Jones is considered a protected activity. See Green v. Adm’rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir.2002) (finding employee’s complaint of harassment to head of personnel department was a protected activity). LeMaire’s suspension is an adverse employment action, as a two-day suspension without pay might have dissuaded a reasonable employee from making a charge of discrimination. See Burlington N., 126 S.Ct. at 2415. Further, the timing of the suspension—approximately two weeks after LeMaire’s report of harassment—suggests a causal connection. See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir.1995) (noting that timing can be a “significant, although not necessarily determinative, factor”). And, as discussed below, the fact that LeMaire left his job on June 15 in order to make a report of harassment, and was subsequently punished for .leaving the job site, is also evidence of a causal connection.
Turning then to LaDOTD’s articulation of a legitimate, non-retaliatory reason for the suspension, LaDOTD claims that it suspended LeMaire because he refused to spray the herbicide as ordered by Endres and left the job site without authorization. This is a legitimate, non-retaliatory reason for taking an adverse employment action. See Calero-Cerezo v. U.S. Dep’t of Justice, 355 F.3d 6, 26 (1st Cir.2004) (finding an employee’s insubordinate behavior and failure to perform duties satisfactorily a legitimate, non-retaliatory reason). It is thus incumbent on LeMaire to show that this reason was a pretext for retaliation.
LeMaire asserts that he left work without spraying the herbicide as requested because he was making a report to Jones about Endres’ sexually harassing behavior. This presents an interesting legal question regarding whether and under what circumstances an employee may refuse to perform his job duties in order to engage in protected activity. We need not decide that issue, however, because there are factual disputes concerning this claim as well.
For one, the letter suspending LeMaire refers to an incident on April 15, 2002, while the actions described by the parties took place on June 15, 2002. Further, it is not clear whether LeMaire did not spray the herbicide because he was making a report to Jones about Endres or whether he simply refused to obey Endres’ order and later decided to report Endres’ behavior. Also, the letter from Hammack suspending LeMaire does not indicate that Hammack interviewed anyone other than Endres in reaching her decision. Evidence of Endres’ specific involvement in the decision would be significant, since En-dres had the greatest motivation to retaliate against LeMaire. See Long v. Eastfield College, 88 F.3d 300, 307-08 (5th Cir.1996) (assuming on appeal that the decision-maker merely rubber-stamped a termination recommendation made by a person with a retaliatory motive).
As a result of the legal and factual issues presented, we cannot say there is no genuine issue of material fact regarding LeMaire’s claim that his two-day suspension was retaliatory. Therefore, we reverse the order of the district court on this point.

*391
4. Termination

LeMaire’s final claim is that his termination was in retaliation for his protected activity. Beginning with his prima facie case, we note that LeMaire did engage in protected activity by reporting En-dres’ conduct to Jones and LeMaire did receive an adverse employment action. There is some question as to whether Le-Maire has produced sufficient evidence of a causal connection, but for purposes of this opinion, we will assume that he has.
LaDOTD asserts that it terminated Le-Maire’s employment based on the culmination of various infractions, including sleeping on the job on July 19, being four hours late to work on July 25, and refusing to mow the grass on July 25. Job performance is a legitimate, non-retaliatory reason for termination. See Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir.2002) (concerning national origin discrimination claim).
The burden, therefore, shifts back to LeMaire to demonstrate that LaDOTD’s legitimate reason is actually a pretext for retaliation. Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer’s business decisions. See Bryant v. Compass Group USA, Inc., 413 F.3d 471, 478 (5th Cir.2005), cert. denied, — U.S. —, 126 S.Ct. 1027, 163 L.Ed.2d 855 (2006); Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir.2001). Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones. See Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir.1991) (stating that “even an incorrect belief that an employee’s performance is inadequate” is a legitimate reason). Therefore, LeMaire must do more than simply argue that LaDOTD made an incorrect decision.
Here, LaDOTD was presented with conflicting stories regarding whether LeMaire was sleeping on the job on July 19. En-dres asserted LeMaire was sleeping, and four of LeMaire’s co-employees claim Le-Maire told them he was sleeping. Despite LeMaire’s denial of these actions, we will not second-guess LaDOTD’s decision to disbelieve LeMaire’s explanation, given the conflicting factual accounts. Simply disputing the underlying facts of an employer’s decision is not sufficient to create an issue of pretext. See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir.2002) (“Merely disputing [the employer’s] assessment of [the employee’s] performance will not create an issue of fact.”).
As for LeMaire’s conduct on July 25, he admits to being late and not mowing the grass, but attempts to excuse his refusal to mow based on the weather. Presumably, LeMaire presented this information to Hammack at the August 13 meeting, and it was considered by LaDOTD in making its decision. Again, LeMaire must do more than just dispute the underlying facts and argue that LaDOTD made the wrong decision in order to survive summary judgment. See Bryant, 413 F.3d at 478 (stating that the fact that an employer’s investigation reaches the wrong conclusion does not establish an improper motivation).
Therefore, LeMaire has failed to create a genuine issue of material fact regarding whether LaDOTD’s decision to terminate him was a pretext for retaliation. Consequently, we affirm that portion of the district court’s order.

C. Race Discrimination

Out of an abundance of caution, La-DOTD also moved for summary judgment as if LeMaire had brought a race discrimination claim, even though LeMaire’s complaint made no mention of race. On appeal, LeMaire contends that inclusion of *392 race discrimination arguments in La-DOTD’s motion for summary judgment somehow tainted the district court’s consideration of the issues. We disagree.
First, there is no evidence, other than speculation, that the district court was somehow misled by the argument concerning race discrimination.[6] Second, LeMaire has provided this court with no precedent for holding that an overbroad summary judgment argument can render an entire decision faulty. And third, we have now had the opportunity to conduct a de novo review of the summary judgment motion, unclouded by any concern of race discrimination; therefore, any error has been rendered harmless. As a result, we will not reverse the district court’s judgment on these grounds.
V. CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s order as it relates to LeMaire’s retaliation claim regarding En-dres’ order to spray herbicide on June 15, 2002, and LeMaire’s termination. We REVERSE the remainder of the district court’s order and REMAND for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

. Although it is not explicitly stated in the record, it appears that Terri Robison and Terri R. Hammack are the same person.

. LaDOTD’s motion also pointed out that La-DOTD had a workplace harassment policy; however, that is irrelevant to the issues actually presented on summary judgment. Had LaDOTD raised an Ellerth/Faragher defense, such evidence might prove helpful, but since LaDOTD never filed an answer in this case, it has raised no affirmative defenses. See Wyatt v. Hunt Plywood Co., 297 F.3d 405, 409 (5th Cir.2002) (describing Ellerth/Faragher defense as requiring evidence that employer exercised reasonable care to prevent and correct sexual harassment and that employee unreasonably failed to take advantage of those measures).

. As a result of the above discussion, we make no comment about whether the alleged comments meet the threshold of same-sex harassment required by Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), or whether they created a hostile work environment as described by Meritor Savings Bank FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Those issues were never raised in the briefing before the district court, addressed in the opinion of the district court, or briefed before this court.

. LaDOTD did not move for summary judgment regarding Endres’ order that LeMaire spray herbicide on the ground that it did not qualify as an adverse employment action. We, therefore, do not consider whether this activity satisfies the adverse employment action standard recently set by the Supreme Court in Burlington Northern & Santa Fe Railway Co. v. White, - U.S. -, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

. The dissent is correct that LaDOTD did reference the other acts of retaliation in its motion; however, the reference was simply an acknowledgment that LeMaire had asserted those claims. LaDOTD never put forward an argument in favor of summary judgment on those claims, nor did it provide a legitimate, non-retaliatory reason why LeMaire was assigned to the allegedly unpleasant and demeaning duties.

. Of course, given the district court's lack of written reasons for its ruling, we recognize that such evidence may be hard to come by.