# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 5, 2013

Lyle W. Cayce
Clerk

No. 12-10523
Summary Calendar

BRENDA MITCHELL,

Plaintiff-Appellant

v.

SIKORSKY AIRCRAFT,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:10-cv-889

Before JOLLY, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In this Title VII retaliation case, Appellant Brenda Mitchell appeals the district court's denial of Mitchell's motion for continuance, grant of Appellee Sikorsky Aircraft's motion for summary judgment, and denial of Mitchell's motions for reconsideration and relief from the judgment. We affirm the district court's judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10523

FACTUAL AND PROCEDURAL BACKGROUND

In September 2008, Mitchell was hired to work as a reliability aircraft engineer in the Fort Worth office of Sikorsky Aircraft ("Sikorsky"). On January 29, 2010, Mitchell sent an email to John Amsden, office manager for the Fort Worth office, in which Mitchell complained of a "disturbing and offensive" image posted on an office bulletin board depicting President Obama as Darth Vadar. R. 160. Mitchell suggested in the email that the image had "racist overtones" and she urged the company to resolve the matter. *Id.* Copies of the email were also sent to Mitchell's supervisors, Phillip Hensley and Matthew Gogal. That same day, Hensley assured Mitchell that he would discuss the matter with Amsden and, shortly thereafter, Amsden sent an office-wide email instructing Fort Worth employees that "[u]nder NO circumstances should photos/images opposed to our President be displayed in the office." R. 161.

The following week, on February 3, 2010, Mitchell emailed Hensley and Gogal to complain about a note on an office bulletin board allegedly criticizing the federal government. Mitchell did not claim that the note conveyed a racial message, but rather she described it as "political propaganda" and requested a response. R. 162. Amsden sent an office-wide email on February 5 stating that office bulletin boards "are not intended to provide a platform for employees to express their opinions or to provide derogatory information about the company, the government, etc." *Id.*

On March 8, 2010, Mitchell contacted Colin Cain in Sikorsky's human resources department to allege that because of Mitchell's previous complaints, Mike Savage, a co-worker in the Fort Worth office, had called Mitchell a "troublemaker" and "kicked at" her. R. 5. In a March 10, 2010 letter to Cain, Mitchell elaborated on her allegations, stating that she had "endured over a month's worth of orchestrated *covert* efforts to a) push me out, [and] b) paint me as an out of control manipulative employee." R. 164. On March 13, 2010,

No. 12-10523

Mitchell sent a second letter to Cain speculating that Amsden might have instructed the Fort Worth office building's management company, First Command, to delete video footage documenting the alleged incident with Savage. Mitchell also claimed that she had been "followed and watched before work and during [her] lunch break by the First Command security officer." R. 165–66. Cain investigated Mitchell's claims by interviewing Savage and Amsden. Savage denied Mitchell's claims and Amsden stated that he had not instructed First Command to take any of the actions alleged by Mitchell. Cain instructed Savage to have no further contact with Mitchell.

Between March and August 2010, Mitchell's supervisors learned of additional events that allegedly raised concerns about Mitchell's well being and the safety of her co-workers.[1] On August 19, 2010, Amsden, Cain, and Hensley decided to place Mitchell on temporary paid leave while Cain consulted with Sikorsky's medical department to plan a course of action to address Mitchell's behavior and to assess her fitness for duty. Cain and Carol Kagdis, Sikorsky's medical director, arranged for an independent psychiatric evaluation of Mitchell. Mitchell was then instructed in an August 26, 2010 letter to return a signed acknowledgment and release form that would either authorize Sikorsky to contact Mitchell's physician or permit a fitness for duty evaluation by another physician paid for by Sikorsky. The letter, which expressed Sikorsky's concern for the safety of its employees in light of Mitchell's change in behavior, indicated

---

[1] Examples of such events include Mitchell's May 26 claim that Amsden was "attempting to harass" her by sending an office-wide email stating that employees were no longer allowed to park in a parking lot across the street; a July 26 complaint from a Sikorsky employee indicating that Mitchell was glaring at the employee without provocation; a Federal Express driver's observation that Mitchell had been filming the driver with a hand-held camera; a police officer's report that Mitchell had filed a complaint alleging that she was being followed by Sikorsky employees and the officer's suggestion that Mitchell was "suffering from some type of paranoia;" and a former employee's claim that Mitchell planned to acquire a concealed handgun license. R. 166–68.

No. 12-10523

that Mitchell's failure to comply with the letter's instructions could lead to termination of her employment.

After Mitchell failed to respond to the August 26 letter, the company sent a second letter on September 7, 2010 stating that failure to comply with the instructions in the August 26 letter would result in termination for reason of job abandonment. Mitchell responded on September 9, 2010 in a letter stating that she would only allow her physician to release general information contained in a summary report prepared by her physician on June 29, 2010. Because of Mitchell's failure to comply with the August 26 and September 7 letters, Sikorsky terminated Mitchell's employment on September 14, 2010.

On November 23, 2010, Mitchell brought suit against Sikorsky pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981, alleging that Sikorsky terminated her employment in retaliation for her complaints of racial discrimination. Sikorsky filed a motion for summary judgment on January 18, 2012, which was the deadline to file pursuant to the district court's scheduling order. Under Local Rule 7.1(e) of the Northern District of Texas, Mitchell's response to Sikorsky's motion for summary judgment was due on or before February 8, 2012. On February 2, 2012, Mitchell filed a motion to abate her response to Sikorsky's motion for summary judgment in order to secure more time to conduct discovery. Treating Mitchell's motion to abate as one for continuance pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, the district court denied the motion on February 3, 2012. Mitchell failed to respond to Sikorsky's motion for summary judgment before the February 8 deadline and, on March 14, 2012, the district court granted Sikorsky's unopposed motion. On April 11, 2012, Mitchell filed motions for reconsideration and relief from the judgment pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, which the district court denied on April 12, 2012. This timely appeal followed.

No. 12-10523

## STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo and apply the same standards as the district court. *Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 694 (5th Cir. 2011). We review a district court's denial of a motion for continuance for abuse of discretion. *United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007). The same abuse of discretion review applies to a district court's denial of a Rule 59(e) motion for reconsideration, *Johnson v. Diversicare Afton Oaks LLC*, 597 F.3d 673, 677 (5th Cir. 2010), and a denial of a Rule 60(b) motion for relief from a judgment, *Frazar v. Ladd*, 457 F.3d 432, 435 (5th Cir. 2006).

## ANALYSIS

I.   Motions for Continuance, Reconsideration, and Relief from the Judgment

Mitchell did not meet the February 8, 2012 deadline to respond to Sikorsky's motion for summary judgment and, instead, filed an untimely response on April 11, 2012, along with her motions for reconsideration and relief from the judgment. On appeal, Mitchell argues that the district court erred in denying her motion for continuance because she did not have enough time to conduct discovery before the response deadline. Specifically, Mitchell argues that the district court should have granted her request to extend the response deadline beyond the March 12, 2012 discovery deadline specified in the district court's scheduling order. Mitchell's appeal from the district court's denial of her motions for reconsideration and relief from the judgment is premised on the same argument, namely, that Mitchell's untimely response presented a material issue of fact and the court thus erred in failing to consider Mitchell's response in its summary judgment ruling.

Rule 56(d) (former Rule 56(f)) provides a "much needed tool to keep open the doors of discovery in order to adequately combat a summary judgment motion." *Six Flags Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009) (internal quotation marks omitted). At the same time, although

5

a Rule 56(d) motion should be "liberally granted," *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006), it should not be automatically granted.  A party seeking additional discovery pursuant to Rule 56(d) must show 1) "how that discovery will create a genuine issue of material fact," *Six Flags Inc.*, 565 F.3d at 963 (internal quotation marks omitted), and 2) that the movant "exercised due diligence in discovery," *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 756 (5th Cir. 2005).

We agree with the district court that Mitchell neither explained how the discovery she sought would create a genuine issue of material fact, nor did she show due diligence in conducting discovery.[2]  First, in her February 2, 2012 motion, Mitchell listed thirteen individuals whom she wanted to depose, but she failed to describe what she hoped those depositions might uncover.  Second, Mitchell had over seven months between the entry of the district court's June 16, 2011 scheduling order and her February 2, 2012 motion for continuance to schedule and conduct depositions.  Mitchell's assertions that the holidays complicated scheduling, her counsel had other trials, and the witnesses were in three different states fall short of explaining why she waited until December 27, 2011—three weeks before motions for summary judgment were due pursuant to the scheduling order—to begin coordinating the depositions with Sikorsky.  Accordingly, we conclude that the district court did not abuse its discretion in denying Mitchell's motion for continuance.

Because we find that Mitchell's motion for continuance was properly denied, we also hold that the district court did not err in denying Mitchell's motions for reconsideration under Rule 59(e) and relief from the judgment under

---

[2] To the extent that Mitchell argues that the district court should have granted a continuance merely because the discovery period remained open after her response was due, Fifth Circuit precedent disposes of this argument.  *See Baker*, 430 F.3d at 756 ("[I]n a motion to extend the time to respond to a motion for summary judgment, the simple claim that discovery has not closed is insufficient.").

No. 12-10523

Rule 60(b)(1), as those motions challenged the court's summary judgment ruling on the basis of the court's alleged error in denying Mitchell's motion for continuance.[3]  Mitchell's invocation of Rule 59(e) is improper because it is an attempt to revisit the question of whether the district court erred in denying her motion for continuance.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" (quoting 11 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1, at 127–28 (2d ed. 1995)); *Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) ("[A Rule 59(e)] motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.").[4]  The same holds true for Mitchell's Rule 60(b) motion.  *See Gen. Universal Sys. v. Lee*, 379 F.3d 131, 157 (5th Cir. 2004) (holding that a party "may not use a Rule 60(b) motion as an occasion to relitigate its case").

Furthermore, Mitchell's reliance on Rule 60(b)(1),which provides that a court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect," FED. R. CIV. P. 60(b)(1), is misplaced because Mitchell's failure to respond to Sikorsky's motion for summary judgment was not

---

[3] As in her motion for continuance, Mitchell argued in her motions for reconsideration and relief that additional discovery "was necessary to provide an adequate and proper response to Defendant's summary judgment [motion]."  R. 217.

[4] To prevail on a Rule 59(e) motion, a movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence."  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (internal quotation marks omitted).  Even if we were to construe Mitchell's Rule 59(e) motion as alleging that newly discovered evidence was uncovered through the depositions conducted by Mitchell after the response deadline, but before the close of discovery, Mitchell has failed to demonstrate that this evidence was not available before the district court's grant of summary judgment.  *See Templet*, 367 F.3d at 479 ("[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration.").

only inexcusable, but also intentional. As evidenced by her motion for continuance, Mitchell was fully aware of the February 8 deadline to respond and knowingly failed to meet that deadline, presumably because she had not yet conducted sufficient discovery. As noted above, we conclude that Mitchell's underlying failure to conduct sufficient discovery before the response deadline resulted from her own lack of due diligence. Thus, knowing that she faced a February 8 deadline, and failing to exercise due diligence in conducting discovery before that deadline, Mitchell's failure to file a timely response cannot constitute "excusable neglect" under Rule 60(b)(1). *Cf. Lowndes v. Global Marine Drilling Co.*, 909 F.2d 818, 819 (5th Cir. 1990) (affirming denial of Rule 60(b)(1) motion because "the motion provided no excuse why the deposition in support of the opposition to the motion for summary judgment had not been timely taken and filed," and distinguishing case where movant unintentionally missed filing deadline).

Moreover, even if the untimeliness of Mitchell's response could be characterized as "neglect" rather than intentional noncompliance, the four-factor test for "excusable neglect" outlined by the Supreme Court and followed by the Fifth Circuit would lead this court to the same result. *See Silvercreek Mgmt. v. Banc of Am. Secs. LLC*, 534 F.3d 469, 472 (5th Cir. 2008) ("Under *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 395 (1993), the court is to consider prejudice to the opposing party, length of the delay, and reason for the delay in determining whether the claimant's neglect was excusable and the delay was made in good faith."). Having failed to exercise due diligence in conducting discovery before the response deadline, Mitchell can offer no good reason for her failure to meet the deadline that would support a finding of excusable neglect. *See McKenzie v. Principi*, 83 F. App'x 642, 644 (5th Cir. 2003) (affirming denial of 60(b)(1) motion because movant offered "no reason to excuse" late filing of response to summary judgment motion other than conflicts

in scheduling); *Bynum v. Ussin*, 410 F. App'x 808, 811 (5th Cir. 2011) (finding no satisfactory reason for 60(b)(1) movant's failure to respond to summary judgment motion).

II.     Summary Judgment

Affirming the district court's denial of Mitchell's motions for continuance, reconsideration, and relief from the judgment, we are still left to decide whether the district court erred in granting summary judgment in favor of Sikorsky.  In doing so, we may review only the record before the district court at the time summary judgment was granted, *Moore v. Miss. Valley State Univ.*, 871 F.2d 545, 549 (5th Cir. 1989), thus barring us from considering the evidence contained in Mitchell's untimely response to Sikorsky's motion for summary judgment.

We analyze Mitchell's Title VII retaliation claim under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See LeMaire v. Louisiana*, 480 F.3d 383, 388 (5th Cir. 2007).  Under this framework, the plaintiff must first establish a prima facie case of retaliation by showing that "(1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.*  If the plaintiff can establish a prima facie case, the burden shifts to the defendant to demonstrate a legitimate, non-retaliatory purpose for the employment action. *Id.*  The plaintiff must then show that the defendant's stated reason for the employment action is a pretext for retaliation, which the plaintiff accomplishes by showing that the adverse employment action would not have occurred "but for" the defendant's retaliatory reason for the action. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).  To establish "but for" causation, the plaintiff must show "a conflict in substantial evidence," an evidentiary burden which is met when "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Long v.*

No. 12-10523

*Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted).

The district court found that Mitchell failed to offer any evidence that Sikorsky's non-retaliatory reason for terminating her employment, namely, that she failed to comply with Sikorsky's requests for medical information, was pretextual. We agree with the district court. Based on our review of the record before the district court, we find that even assuming arguendo that Mitchell adequately established a prima facie case of retaliation, she failed to show that, but for Mitchell's protected conduct, Sikorsky would not have terminated her employment. Specifically, nothing in the record shows that Mitchell would not have been fired solely because of her failure to comply with Sikorsky's request for medical information,[5] and irrespective of whether she had raised complaints of racial discrimination. The only potential evidence of pretext in the record is the temporal proximity of Mitchell's complaint to her termination, but this falls short of establishing but for causation. *See McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (noting that temporal proximity may establish prima facie case, but does not establish pretext without additional evidence). Accordingly, we hold that the district court did not err in granting summary judgment in favor of Sikorsky.

## CONCLUSION

For the above reasons, we AFFIRM the district court's judgment.

AFFIRMED.

---

[5] Mitchell does not dispute that "[t]he failure of a subordinate to follow the direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 167–68 (5th Cir. 1999).