# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 21, 2010

Charles R. Fulbruge III
Clerk

No. 08-41059

MARIA LUISA SANDRIA SAQUI,

> Plaintiff-Appellant

v.

PRIDE CENTRAL AMERICA LLC; PRIDE CENTRAL AMERICA LLC
(Mexican Branch); GULF OF MEXICO PERSONNEL SERVICES
S. DE R.L. DE C.V.,

> Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and GARZA and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This appeal involves the death of a Mexican citizen, Christian Spinosa Sandria ("Sandria"), who died while working on board the Pride Mississippi, a vessel owned by the Appellee, Pride Central America, LLC ("PCA").  Appellant Maria Luisa Sandria Saqui ("Saqui"), the personal representative of Sandria, appeals from a district court's order dismissing her claims against PCA for *forum non conveniens* ("FNC").  For the reasons discussed below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2004, Petroleos de Mexico ("Pemex"), the national oil company of Mexico, leased the Pride Mississippi from PCA. Pemex's operations included drilling a well that is located approximately 47.18 nautical miles from Ciudad Del Carmen on the eastern coast of Mexico. Pemex controlled the well operations and provided the drilling crew to manage and operate the rig. A Mexican corporation, Gulf of Mexico Personnel Services S. de R. L. de C. V. ("GOMPS"), provided a maintenance crew.

Sandria was employed by GOMPS as part of the maintenance crew assigned to assist Pemex with its offshore drilling operations aboard the Pride Mississippi. While Sandria and other crew members were tying down a piece of equipment in preparation for a pending storm, it became disconnected from the rig and fell into the water, pulling Sandria and two other crew members overboard. Sandria and another crew member were killed. The third crew member was rescued. The accident occurred in Mexican waters in the Gulf of Mexico.

The Mexican Ministry of Labor and Social Security assumed jurisdiction over the accident and investigated its cause. Participants in the investigation included Mexico's Federal Labor Inspectors as well as representatives of the Safety and Health Commission. The investigations occurred entirely in Mexico. According to accident reports, the family members of the deceased crew members were to be compensated in accordance with the laws of Mexico.

On September 12, 2006, Saqui, a Mexican citizen, filed suit in the Southern District of Texas as Sandria's personal representative against PCA, alleging that PCA failed to provide a safe workplace. On October 12, 2006, PCA filed a motion to dismiss on FNC grounds. In its motion, PCA asserted that it would agree to submit to the jurisdiction of the Mexican courts and to make available there any witnesses under its control. On November 6, 2006, Saqui

No. 08-41059

filed a response to PCA's motion to dismiss, arguing that Mexico did not provide an available forum.

PCA and Saqui both presented evidence as to whether Mexico was an available forum. PCA submitted an affidavit from Octavio Canton ("Canton"), an attorney licensed to practice law in Mexico. Canton's affidavit stated that Mexico has jurisdiction to adjudicate Saqui's claims, and that the laws of Mexico provide Saqui with a legal remedy. Saqui countered Canton's opinion with that of Henry St. Dahl ("Dahl"), an expert in international law. Dahl's affidavit incorporated an affidavit from Leonel Pereznieto-Castro ("Pereznieto"). Pereznieto's affidavit stated that there is "preemptive jurisdiction" anytime a court in the United States dismisses a case on FNC grounds in favor of a forum in Mexico. Preemptive jurisdiction allegedly requires the Mexican court to reject jurisdiction over the case, even if the defendant agrees to submit to the jurisdiction of Mexican courts.

Pereznieto's affidavit relied on a case where he was retained as an expert, pending in multi-district litigation ("MDL"), as proof that "preemptive jurisdiction" is a real legal concept in Mexico. Pereznieto explained that when the plaintiff in that case, Sofia Lopez de Manez ("Manez"), re-filed her case in Mexico, the Mexican court dismissed it for lack of jurisdiction. In *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Action*, 305 F. Supp. 2d 927, 939 (S.D. Ind. 2004), the MDL court dismissed Manez's claims on FNC grounds. On appeal, the Seventh Circuit reversed. The Seventh Circuit opined that the case would be an "easy candidate for straightforward affirmance," but that Manez had presented evidence that she filed the case in Mexico after the district court's dismissal and the Mexican court had determined that it lacked jurisdiction to hear the case. *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Action*, 420 F.3d 702, 705 (7th Cir. 2005). The defendants asserted, however, that Manez acted improperly because she (1) failed to notify the defendants that she was

3

filing suit and (2) did not file suit in the Mexican state where the underlying accident in the case occurred. *Id.* at 706. Thus, the Seventh Circuit remanded and instructed the MDL court to hold an evidentiary hearing on those issues. *Id.* at 706-07.

The MDL court held an evidentiary hearing to determine whether (1) the plaintiff's actions were taken in good faith, and (2) the Mexican court decisions were entitled to recognition in the United States. *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 470 F. Supp. 2d 917, 919-20 (S.D. Ind. 2006). The MDL court explained that Manez retained Pereznieto to pursue her claim in Mexican court. *Id.* at 920. The MDL court found that Manez "appear[ed] to have contrived this 'adverse' ruling by intentionally filing the case in a [Mexican] court lacking jurisdiction, and when the dismissal came, those orders . . . were submitted to the Seventh Circuit as proof that Mexican courts severally were unavailable." *Id.* at 922. Furthermore, the MDL court sanctioned Pereznieto, "the apparent mastermind behind these frauds on the U.S. and Mexican courts" and ordered him to pay a personal sanction in the amount of $100,000. *In re Bridgestone/Firestone, Inc., Tires Product Liab. Litig.*, 470 F. Supp. 2d 931, 933 (S.D. Ind. 2006).

On February 14, 2007, the district court denied PCA's motion to dismiss. The court determined that PCA's and Saqui's experts, including Pereznieto, were equally credible. The court did not mention the MDL court's November 16th or December 14th orders, that found Pereznieto to have committed fraud.

On July 27, 2007, PCA filed a renewed motion to dismiss on FNC grounds. PCA asserted that after investigating the *Manez* case, it uncovered that Pereznieto committed fraud and then took Dahl's deposition. Dahl admitted that he relied heavily on Pereznieto's affidavit. Dahl conceded that if the Mexican court decisions he relied upon were obtained by a fraudulent manipulation of the Mexican court to procure dismissals, they were weak

authority for the proposition that a Mexican court might not hear the instant case.  Dahl went on to concede that survivors, beneficiaries, and heirs have a remedy under Mexico's civil code for tort claims.  Finally, Dahl agreed that an employee working for a Mexican company on the Continental Shelf of Mexico adjacent to the Mexican shoreline, under contract to the Mexican National Oil Company, is certainly within the reach of Mexico's laws.  Saqui opposed PCA's motion to dismiss.

While the instant case was percolating in the district court, Pereznieto appealed the MDL court's sanctions order against him.  *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578 (7th Cir. 2008).  On July 11, 2008, the Seventh Circuit held that the MDL court erred in awarding sanctions, because "Pereznieto did not receive constitutionally adequate notice and an opportunity to be heard in the proceedings that led to the $100,000 fine and other sanctions against him."  *Id.* at 593-94.  Thus, the Seventh Circuit vacated the district court's order and remanded for reconsideration in light of its opinion.

In this case, the district court referred PCA's renewed motion to dismiss on FNC grounds to the magistrate judge.  On September 5, 2008, the magistrate judge issued its Report and Recommendation ("R & R"), conditionally granting PCA's motion to dismiss on FNC grounds.  The R & R noted that "Dahl concedes in his deposition testimony, [that] his opinion is based heavily on the opinion of Dr. Pereznieto who, the [c]ourt now knows, was previously involved in perpetrating a fraud upon another United States District Court."  The R & R determined that in light of this "new" information, it could not consider Saqui's experts to be credible.  The R & R then recognized that Fifth Circuit law has consistently held that when a defendant submits to the jurisdiction of an alternate forum, that renders the forum available for purposes of FNC analysis.  Thus, the R & R found Mexico to be an available forum.  The R & R did not reference the Seventh Circuit's opinion vacating the MDL court's sanctions

No. 08-41059

against Pereznieto.  Ultimately, the R & R recommended that the district court grant PCA's motion to dismiss on FNC grounds if PCA submitted to the jurisdiction of Mexico's courts.  The R & R also recommended that the district court resume jurisdiction if the Mexican court did not accept the case. On September 29, 2008, the district court accepted the R & R in its entirety.  In doing so, it stated that it had given the "matter de novo review under 28 U.S.C. § 636(b)(1)(c)."

On appeal, Saqui raises two points of error which we address in turn.

## II.  DISCUSSION

### A.    PCA's Renewed Motion to Dismiss

Saqui alleges that the district court committed clear error by reviewing its February 14, 2007 order denying PCA's motion to dismiss on FNC grounds because there was evidence of Pereznieto's alleged fraud available before that order was issued and PCA did not exercise due diligence in trying to get this information to the district court prior to its ruling.  Saqui also argues that the district court did not engage in a de novo review of the magistrate's R & R, because it adopted it ten days after it was issued. These arguments have no merit.

As an initial matter, the district court's February 14th order was an interlocutory order, not a final judgment.  This court has explained that when a district court rules on an interlocutory order, it is "free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).

Furthermore, PCA exercised diligence in bringing the evidence of Pereznieto's alleged fraud to the attention of the district court.  The MDL court

6

No. 08-41059

did not issue sanctions against Pereznieto until after the briefing had concluded on the issue of FNC before the district court. After the district court denied PCA's claims, it sought to depose Dahl to determine the basis for his opinions. After PCA received the transcript of Dahl's testimony, it filed the motion to reconsider. It was entirely reasonable for PCA to wait to file its motion to reconsider until after it received Dahl's testimony indicating that he had misgivings regarding his previous reliance on Pereznieto's affidavit.

Lastly, Saqui argues that the district court did not engage in a de novo review of the magistrate's R & R, because it adopted it ten days after it was issued. In *Freeman v. County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998), this court noted that a district court reviewing a magistrate judge's R & R has wide discretion to consider and reconsider the magistrate judge's recommendation. There is no record support for Saqui's notion that the district court failed to exercise the broad discretionary review described in *Freeman*. Saqui only offers conjecture that the district court did not engage in a proper de novo review because it accepted the R & R ten days after it was issued. No case law or statutory law supports this meritless argument. The district court reviewed the R & R, considered Saqui's objections to the R & R, and stated that it had given the matter de novo review. District court judges have broad discretion in managing their own dockets. *Sims v. ANR Freight Sys. Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). It is not error for the district court to resolve an issue promptly.

In sum, we find that there was no error in the district court's handling of PCA's renewed motion to dismiss based upon FNC grounds.

**B.   Mexico as an Alternative Forum**

Saqui next argues that the district court erred in its decision to grant PCA's motion to dismiss for FNC. We review a district court's dismissal on the basis of FNC for clear abuse of discretion. *See Gonzales v. Chrysler Corp.*, 301 F.3d 377, 379 (5th Cir. 2002) (citing *Baumgart v. Fairchild Aircraft Corp.*, 981

F.2d 824, 835 (5th Cir. 1993)). In order for a case to be dismissed for FNC, there must be another forum that could hear the case, and therefore the district court must first determine whether an alternative forum exists. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981). An alternative forum exists when it is both available and adequate. *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987) (en banc) (citations omitted), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989), *reinstated except as to damages by In re Air Crash Disaster Near New Orleans, La.*, 883 F.2d 17 (5th Cir. 1989) (en banc). If an alternative forum is both adequate and available, the district court must then weigh various private and public interest factors to determine whether dismissal is warranted. *Id.*

Saqui argues that the district court abused its discretion in finding Mexico to be an available alternative forum. An alternative forum is available when "the entire case and all parties can come within the jurisdiction of that forum." *In re Air Crash Disaster*, 821 F.2d at 1165. Mexico's availability as an alternative forum was recently addressed by this court in *In re Ford Motor Co.*, — F.3d —, 2009 WL 4828740 (5th Cir. Dec. 16, 2009). *In re Ford Motor Co.* involves claims transferred from the MDL court back to the Western District of Texas. The court noted that "[w]e have held in numerous cases that Mexico is an available forum for tort suits against a defendant that is willing to submit to jurisdiction there." *Id.* at *5. It recounted this court's decisions in *Gonzales v. Chrysler Corp.*, 301 F.3d 377, 380 n.3 (5th Cir. 2002), *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003), and *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 804 (5th Cir. 2007), and explained that

> These many decisions create a nearly airtight presumption that Mexico is an available forum. We have held that if a defendant submits to jurisdiction, there is a presumption of forum availability; petitioners have done so here. We have held in tort cases . . . that Mexico is an available forum for tort suits against foreign defendants. "Our rule of orderliness 'forbids one of our panels from overruling a prior panel.'" Thus, unless this court en banc or the Supreme Court decides otherwise, petitioners' willingness to submit to jurisdiction in Mexico makes it an available forum for FNC purposes, based on the binding precedent of this court.

*In re Ford Motor Co.*, 2009 WL 4828740, at *5 (footnote omitted). The court went on to note that "[u]nless plaintiffs can show evidence distinguishing this case from our precedent, an order from a Mexican court dismissing this exact case for lack of jurisdiction, or reliable evidence of some subsequent change in Mexican law that calls our earlier determinations into serious question, plaintiffs cannot prevail in their FNC defense." *Id.*

Here, PCA has agreed to submit to the jurisdiction of the Mexican court, thereby making Mexico an available forum. In addition, the district court's order gives Saqui a right to return to a United States court if the Mexican court refuses to grant jurisdiction. Finally, Saqui has failed to establish that the district court abused its discretion in discounting Dahl's testimony because of his reliance on Pereznieto's affidavit.

Similarly, the district court did not abuse its discretion in determining that Mexico is an adequate forum. An alternative forum "is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they might not enjoy the same benefits as they might receive in an American court." *In re Air Crash Disaster*, 821 F.2d at 1165 (citing *Piper Aircraft Co.*, 454 U.S. at 225; *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 829

9

(5th Cir. 1986)).  Saqui argues that Mexico is an inadequate forum because: (1) the amount of damages would be more limited under Mexican as opposed to American law; (2) there exists corruption in the Mexican courts; (3) long delays in the Mexican court system; and (4) a "virtual impossibility" to subpoena out of country witnesses.

The R & R thoroughly addressed each of the errors Saqui now points to on appeal.  The R & R first found that "the mere fact that the amount of damages would be more limited under Mexican as opposed to American law, does not provide 'the basis for finding Mexican courts an inadequate alternative forum.'" (quoting *DTEX,* 508 F.3d at 797).  The R & R then found that Saqui failed to support her assertions, or present compelling evidence, that corruption in the Mexican courts made Mexico an inadequate form. The R & R also found unpersuasive Saqui's argument that Mexican courts are known for their "long delays," in part because the United States courts are unequipped to compel testimony from nonparty witnesses located in Mexico, just as Mexican courts are unequipped to compel testimony from witnesses located in the United States.  The R & R also noted that the case had been stalled in the United States courts because of the inability of the parties to conduct discovery in Mexico. The R & R further found that there would likely be fewer delays in the Mexican courts because the accident occurred in Mexico and involved Mexican citizens and corporations.

As mentioned above, this court employs a "clear abuse of discretion" standard of review when reviewing a motion to dismiss based on FNC. *Gonzales*, 301 F.3d at 379.  The R & R thoroughly reviewed Saqui's claims and found them to be without merit.  Saqui failed to "plainly demonstrate" that she is highly unlikely to obtain justice in Mexico, and therefore has failed to establish how the district court abused its discretion in accepting the R & R's reasonable findings.

No. 08-41059

The district court determined that the private and public interest factors weighed in favor of Mexico as a forum. Saqui contends that the district court improperly weighed the private factors in its decision to dismiss the case for FNC. The factors pertaining to the private interests of the litigants include: (1) the ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) any other practical factors that make trial expeditious and inexpensive. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

Saqui argues that PCA failed to meet its burden of showing that the private interest factors weighed in PCA's favor, because PCA did not present sufficiently detailed evidence of the location of the witnesses and their anticipated testimony. This court, however, has stated that defendants "must provide enough information to enable the district court to balance the parties' interests." *In re Air Crash Disaster,* 821 F.2d at 1165. The district court did not abuse its discretion in determining that PCA presented sufficient evidence in support of the private interest factors. PCA established that: (1) the accident occurred off the coast of Mexico; (2) the injured crew members and their surviving families, including Saqui, are citizens of and reside in Mexico; (3) Sandria died while working aboard a PCA owned offshore oil rig that was leased to, and under the control of, Pemex, the national oil corporation of Mexico; (4) the maintenance crew, including Sandria, were employees of GOMPS, a Mexican corporation with its principal place of business in Mexico; (5) PCA did not control the operations or have any employees aboard the vessel; (6) key physical evidence and most of the witnesses to the accident were located in Mexico; and (7) the Mexican National Government investigated the accident, created documents, and conducted interviews and site inspections in Mexico.

11

No. 08-41059

This court has held that similar private interest factors weigh in favor of granting a motion to dismiss on FNC grounds. *See, e.g.*, *Vasquez*, 325 F.3d. at 672-73. *Vasquez* involved personal injuries resulting from a vehicle crash involving Firestone tires in Mexico. In concluding that the private interest factors weighed in favor of granting a motion to dismiss on FNC grounds, this court noted that:

> The driver of the vehicle, and all decedents are Mexican citizens. . . . [T]he vehicle and tires were manufactured, purchased, and maintained in Mexico. The vehicle had a Mexican owner, and the trip took place entirely in Mexico. All the physical evidence and medical reports are in Mexico . . . . Federal courts have no power of compulsory process over Mexican citizens, including the surviving driver and passenger, the police, and mechanics who serviced and maintained the vehicle.

*Id*. In this case, the R & R engaged in a thorough review of the private interest factors. Its determination that the factors weighed in PCA's favor comports with this court's case law, and is similar to what this court approved as sufficient in *Vasquez*. As a result, the district court did not abuse its discretion in finding that the private interest factors weighed in favor of dismissal.

Although the district court found that the private interest factors weighed in favor of dismissal, it nevertheless weighed the public interest factors and found that they also weighed strongly in favor of dismissal. *See In re Air Crash Disaster*, 821 F.2d at 1164 (holding that a court is required to examine the public interest factors only if it cannot determine whether the private interest factors weigh in favor of dismissal). The relevant public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local

interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* at 1162-63.

On appeal, Saqui did not address the public interest factors in her brief, so objections to the district court's judgment on this issue are waived. *See Audler v. CBD Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008) ("A party waives an issue if he fails to adequately brief it" on appeal.). Even if we were to assume that Saqui did not waive her objections, a review of the R & R fails to demonstrate that the district court abused its discretion. The district court considered the public interest factors, and determined that this case does not have a general nexus with Texas that is sufficient to justify Texas's commitment of judicial time and resources to it. The R & R explained that the record does not contain information relative to court congestion in the Mexican courts. *See DTEX*, 508 F.2d at 802. The R & R then noted that PCA is a Delaware corporation, that conducted and managed its operations in Mexico. The R & R then determined that "Mexican law likely will apply to this case, or, at a minimum, be critical." Finally, the R & R determined that jury duty would unfairly burden Texas citizens because Mexico had a far greater interest in the case than Texas.

Ultimately, the R & R found that the "case was governed by Mexican law regarding the deaths of Mexican nationals while working for a Mexican company while in the waters of Mexico. Other than the Defendant PCA having an office in Houston, Texas, this case has no meaningful connection to this forum." The R & R carefully considered each factor. The district court stated that it conducted a *de novo* review of the R & R and considered Saqui's objections. The court then accepted the R & R in its entirety. The record fails

No. 08-41059

to establish how the court's determination that the public interest factors weighed strongly in favor of dismissal was a clear abuse of discretion.

### III.  CONCLUSION

For the foregoing reasons, we affirm the district court's judgment in its entirety.

All pending motions are DENIED.