# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 16, 2013

No. 12-20019
consolidated with
12-20018

Lyle W. Cayce
Clerk

CITY OF NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM,
Derivatively on Behalf of BP P.L.C.,

Plaintiff - Appellant

v.

ANTHONY B. HAYWARD; IAIN C. CONN; ROBERT W. DUDLEY; BYRON
E. GROTE; ANDY G. INGLIS; CARL-HENRIC SVANBERG; ANTONY
BURGMANS; CYNTHIA B. CARROLL; WILLIAM M. CASTELL; GEORGE
DAVID; DOUGLAS J. FLINT; DEANNE S. JULIUS; H. LAMAR MCKAY;
IAN MG PROSSER; ERROLL B. DAVIS, JR.; PETER SUTHERLAND;
ROBERT A. MALONE,

Defendants - Appellees

BP P.L.C.,

Nominal Defendant - Appellee

_____

CITY OF NEW ORLEANS EMPLOYEES' RETIREMENT SYSTEM,
Derivatively on Behalf of BP P.L.C.,

Plaintiff - Appellant

v.

ANTHONY HAYWARD; ANDY INGLIS; CARL-HENRIC SVANBERG; H.
LAMAR MCKAY; WILLIAM CASTELL; ANTONY BURGMANS; CYNTHIA

No. 12-20019 cons w/ 12-20018

CARROLL; ERROLL B. DAVIS, JR.; IAIN C. CONN; ROBERT W. DUDLEY; BYRON E. GROTE; GEORGE DAVID; DOUGLAS J. FLINT; DEANNE S. JULIUS; IAN MG PROSSER; PETER SUTHERLAND; ROBERT A. MALONE,

                                        Defendants - Appellees

BP P.L.C.,

                                        Nominal Defendant - Appellee

---

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-3447

---

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant City of New Orleans Employees' Retirement System ("NOERS") is the only of several original plaintiffs to appeal the district court's forum-non-conveniens ("FNC") dismissal of their shareholder derivative claims on behalf of nominal Defendant BP p.l.c. ("BP") against individual BP officers and directors ("Defendants"). Because the district court did not abuse its discretion, we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs, BP shareholders, sued under the U.K. Companies Act 2006, alleging that the 2010 *Deepwater Horizon* disaster was the culmination of a longstanding pattern of Defendants' breaches of fiduciary duties to BP. Plaintiffs maintained that the action was properly before a U.S. court because "BP's business, operations, shareholders base and, unfortunately, victims, are

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

concentrated in the U.S."; its operations "touch virtually every state in the nation"; its "operations in Texas and the Gulf of Mexico are *the most significant part of BP's operations and assets in the world*"; the disaster was caused in the U.S.; eight of the seventeen Defendants are U.S. citizens; and judicial economy would best be served by proceeding in the U.S. court due to considerations generated by "parallel civil and criminal proceedings in [the] forum."

Defendants moved to dismiss, in relevant part, on FNC grounds, and the district court granted Defendants' motion. The district court then denied Plaintiffs' motion to alter or amend the court's order under Federal Rule of Civil Procedure 59(e). NOERS timely appealed.

## II. DISCUSSION

### A. FNC Dismissal

"We review a district court's dismissal on the basis of FNC for clear abuse of discretion." *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 211 (5th Cir. 2010). "[S]ubstantial deference" must be afforded to the district court's decision "where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). We are not to substitute our "own judgment for that of the District Court." *See id.* "[O]ur duty as an appellate court in reviewing [FNC] decisions is to review the lower court's decisionmaking process and conclusion and determine if it is reasonable; our duty is not to perform a de novo analysis and make the initial determination for the district court." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1167 (5th Cir. 1987) (en banc), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989).

District courts must engage in a two-part analysis to determine whether to dismiss a case on FNC grounds. *See Saqui*, 595 F.3d at 211. First, they must determine whether there is an available, adequate alternative forum that can

hear the case. *Id.* If an alternative forum exists, courts then must "consider all of the relevant factors of private interest, weighing in the balance the relevant deference given the particular plaintiff's initial choice of forum . . . . If the district court finds that the private interests do not weigh in favor of the dismissal, it must then consider the public interest factors." *In re Air Crash,* 821 F.2d at 1165. A defendant moving for FNC dismissal must demonstrate that the private and public interest factors "weigh heavily on the side of trial in the foreign forum." *Id.* at 1164. No single factor is to be given dispositive weight. *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986). We review the district court's analysis of each disputed factor.[1]

   1.    Availability

"An alternative forum is available when the entire case and all parties can come within the jurisdiction of that forum." *Saqui*, 595 F.3d at 211 (internal quotation marks omitted). Here, to satisfy the availability requirement, the district court conditioned FNC dismissal on Defendants either providing proof of amenability to service of process or stipulating that they would "submit to the jurisdiction of the English courts." *In re BP S'holder Derivative Litig.*, No. 4:10-CV-3447, 2011 WL 4345209, at *6 (S.D. Tex. Sept. 15, 2011). The Defendants filed the stipulation.

A defendant's submission to the jurisdiction of a foreign forum sufficiently satisfies the availability requirement. *See Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1249 & n.12 (5th Cir. 1983) ("[W]e find that the conditional dismissal, by inducing defendant's submission to the jurisdiction of an alternative forum, is one particularly effective manner of assuring that the alternative forum is available."). Accordingly, Defendants' stipulation satisfies the availability requirement here.

---

[1] As the district court found the English forum to be adequate and NOERS does not dispute this finding, we do not address adequacy.

2.    Plaintiff's Forum Choice

As the district court recognized, there is usually a strong presumption in favor of the plaintiff's forum choice, which "'should rarely be disturbed.'" *In re BP*, 2011 WL 4345209, at *3 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "A citizen's forum choice should not be given dispositive weight, however." *Piper Aircraft Co.*, 454 U.S. at 256 n.23. Indeed, analysis of the plaintiff's forum choice is intertwined with the public and private interest factors such that "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Id*; *see also In re Air Crash*, 821 F.2d at 1165.

This case presents an exception to the general rule of deference, however, because it "involves the special problems of [FNC] which inhere in derivative actions." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 521 (1947). In a derivative action, "where there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Id.* at 524. In derivative actions, a plaintiff may either "have a substantial interest of his own to protect," or he may "be a mere phantom plaintiff with interest enough to enable him to institute the action and little more." *Id.* at 525.

Here, the district court found that Plaintiffs were phantoms as they offered no proof of their own substantial interest in this litigation that should afford their forum choice greater deference in this derivative action. *See In re BP*, 2011 WL 4345209, at *5. Because NOERS's failure to offer any proof of its substantial interest in this litigation before the district court bars it from doing so now, *see LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007), we proceed to analyze the private and public interest factors.

No. 12-20019 cons w/ 12-20018

3.     Private Interest Factors

In conducting an FNC analysis, the private interest factors that a district court must consider are:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil*, 330 U.S. at 508.[2]  Overall, the district court found that these factors weighed slightly in favor of dismissal.

a.     *Relative Ease of Access to Sources of Proof*

"[I]n the derivative action it is more likely that only the corporation's books, records and transactions will be important and only the defendant will be affected by the choice of the place of production of records." *Koster*, 330 U.S. at 526.  On that basis, the district court found that this factor "favors England as the appropriate forum." *In re BP*, 2011 WL 4345209, at *6.  The court reasoned that "the majority of the relevant documents . . . are likely to be located . . . in London," and that "BP's Board of Directors meets in England and . . . the records of their discussions and decisions are maintained there." *Id.* at *8.  While the court acknowledged that some documents would be found in the Eastern District of Louisiana, it found those documents to be of "questionable relevance" and "unlikely to outnumber" the relevant documents that could be found in England. *Id.*

NOERS counters that the district court should have assigned greater weight than it did to modern technological advancements that would ease discovery burdens.  NOERS also contends that "[w]here relevant and material

---

[2] Like the district court, we consider only the first two private interest factors because a view of the premises is irrelevant here and the discussion of "other practical problems" is subsumed with in the other factors addressed.

documents and witnesses are located in more than one country, the location does not weigh in favor of either party and this private factor is neutral." We disagree.

As the district court observed, NOERS cited no cases that "suggest that [technological] innovations render [the issue of the burdens associated with transnational discovery] *inconsequential* to the [FNC] analysis." *In re BP*, 2011 WL 4345209, at *8. Indeed, though advancements in technology may very well facilitate access to sources of proof, they have by no means completely eliminated the factor as a consideration. *Cf. In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) (en banc) (finding in § 1404 transfer of venue case that, though "access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments, [this fact] does not render [the ease of access] factor superfluous"). Thus, we conclude that the district court did not abuse its discretion in determining that an English forum would provide the greatest ease of access to sources of proof. The court could reasonably find that most records relevant to this derivative lawsuit are located there, thereby best facilitating discovery in that forum. *See In re Air Crash,* 821 F.2d at 1167.

        b.     *Availability of Compulsory Process / Cost of Securing Witnesses*

Based on the individual defendants' location and citizenship, the district court found that most witnesses would be subject to compulsory process in England and that the cost of securing them in the United States would be significant. *In re BP*, 2011 WL 4345209, at *9-10. Nevertheless, the court determined that this factor weighed "only slightly in favor of England," as "[a] large minority of the individual defendants is American." *Id.* at *10. NOERS claims this factor should be a "neutral" because witnesses can be found "around

the globe." Like in the ease-of-access context, that does not demonstrate that the district court abused its discretion.[3]

We conclude that the district court did not abuse its discretion in determining that this factor weighed slightly in favor of dismissal. *See Syndicate 420*, 796 F.2d at 831 (private interest factors strongly favor dismissal where "[m]ost of [the] witnesses are British, many may prove unwilling to travel to Louisiana to testify, . . . an American federal court is without power to compel them to do so . . . . [, and] the cost of obtaining [their] attendance . . . would certainly be considerable, and could prove to be prohibitive."). Accordingly, we conclude that the district court appropriately proceeded to a public interest factor analysis.

### 4. Public Interest Factors

The public interest factors that a district court must consider in an FNC analysis are:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co.*, 454 U.S. at 241 n.6 (internal quotation marks omitted). The district court found that the public interest factors weighed heavily in favor of dismissal.

### a. *Administrative Difficulties*

Administrative considerations consist of a "court's interest in controlling a crowded docket." *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th

---

[3] For the first time on appeal, NOERS also asserts that "not all seventeen individual Defendants may be of equal importance." Whatever the merit of this contention, it is waived because NOERS did not raise it in the district court. *See LeMaire*, 480 F.3d at 387.

Cir. 1993). Difficulties arise "when litigation is piled up in congested centers instead of being handled at its origin." *Gulf Oil*, 330 U.S. at 508. The Supreme Court has recognized that derivative actions may be particularly burdensome on a court's administration, as that type of lawsuit "brings to the court more than an ordinary task of adjudication; it brings a task of administration." *Koster*, 330 U.S. at 526.

The district court reasonably found this factor favored dismissal, observing that "dismissing this derivative suit, which constitutes one-third of the Court's MDL cases, would undoubtedly relieve a substantial burden on the Court's already ample caseload." *In re BP*, 2011 WL 4345209, at *11. Further, the court found that this case, rather than involving a great deal of overlap in the discovery with the other pending MDL cases, would be burdensome in that it would "generate separate pre-trial motions and . . . trials" as a result of the "distinct legal issues and parties" involved in each of the cases. *Id.*[4] We discern no abuse of discretion in this analysis.

> b.      *Local Interest*

"The Supreme Court has recognized that '[t]here is a local interest in having localized controversies decided at home.'" *In re BP*, 2011 WL 4345209, at *11 (alteration in original) (quoting *Gulf Oil*, 330 U.S at 508-09). The district court found that this factor weighed in favor of dismissal because the instant lawsuit is intended to compensate the British company BP for its financial and reputational harms, rather than to redress the impact of the *Deepwater Horizon* incident in the United States. *Id.* at *12. Because this is a derivative action and Plaintiffs sued on behalf of the British company BP for breaches of fiduciary

---

[4] NOERS responds by raising two arguments for the first time on appeal: (1) that technological advancements eliminate any difficulties on the court's docket, and (2) that a court's voluntary acceptance of cases from an MDL panel should preclude it from avoiding adjudication based on administrative difficulties. These arguments are waived and we do not address them. *See LeMaire*, 480 F.3d at 387.

duties, the court's conclusion that England has the greater local interest was not an abuse of discretion. *See Koster*, 330 U.S. at 526 (location of derivative action most likely relevant only to defendant).

      c.     *Interest in Having Trial at Home With the Governing Law/Conflict-of-Law Problems*

The foreign law factors in the FNC analysis recognize "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action" and the importance of avoiding "unnecessary problems in conflict of laws, or in the application of foreign law." *Saqui*, 595 F.3d at 214. Standing alone, the fact that a lawsuit might require a U.S. court to apply foreign law is insufficient to justify FNC dismissal. *See Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987). "The doctrine of [FNC], however, is designed in part to help courts avoid conducting complex exercises in comparative law." *Piper Aircraft Co.*, 454 U.S. at 251.

The district court did not abuse its discretion in analyzing the two foreign law public interest factors together and concluding that they "weigh heavily in favor of England as the more convenient forum."[5] *See In re BP*, 2011 WL 4345209, at \*12-14. The court explained that the specific English statute that would be applied, the U.K. Companies Act, was enacted recently, thereby leaving the U.S. court with little jurisprudence that would direct it in how to apply the statute properly. *Id.* at \*13. On this basis, the district court could reasonably find that adjudicating the case would lead to "unnecessary problems in . . . the application of foreign law." *See Saqui*, 595 F.3d at 214.

      d.     *Unfairness of Burdening Citizens with Jury Duty*

---

[5] For the first time on appeal, NOERS insists that "U.S. oil industry safety standards for deepwater exploration and drilling activities in the Gulf are equally as relevant to resolving this derivative action as is the U.K. statute." Again, we do not consider this waived argument. *See LeMaire*, 480 F.3d at 387.

Finally, the district court considered the fact that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil*, 330 U.S. at 508-09. The court found that this factor weighed in favor of dismissal since resolution of the instant claims "would require a jury to delve deeply into whether a group of current and former BP officers and directors, headquartered in England, properly governed an English corporation. The jury would further have to decide the facts with reference to standards set forth by the U.K. Parliament." *In re BP*, 2011 WL 4345209, at \*14. The district court also concluded that "it would be unfair to burden the citizens of Louisiana with [a] lawsuit" that is relevant only to BP's internal governance in England and not to the personal injuries that resulted from the *Deepwater Horizon* incident. *Id.* The district court acted within its discretion in finding that it would be unduly burdensome to require a U.S. jury to hear such a case.

In sum, the district court appropriately exercised its discretion in assessing the relevant private and public interest factors and finding that they weighed in favor of dismissal.

## B.    Failure to Consider Additional Conditions on Dismissal

The district court conditioned its FNC dismissal upon "[d]efendants either (1) proffering adequate proof that they are, in fact, amenable to process in England, or (2) submitting a stipulation that they will submit to the jurisdiction of the appropriate English court." *In re BP*, 2011 WL 4345209, at \*16. NOERS urges that our precedent requires a district court to consider, sua sponte, certain additional enumerated measures before granting FNC dismissal. *See Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1551 (5th Cir. 1991).

We require that district courts "take measures, as part of their dismissals in [FNC] cases, to ensure that defendants will not attempt to evade the jurisdiction of the foreign courts." *Id.* These measures "often *include*

agreements between the parties to litigate in another forum, to submit to service of process in that jurisdiction, to waive the assertion of any limitations defenses, to agree to discovery, and to agree to the enforceability of the foreign judgment." *Id.* (emphasis added). The district court has "discretion to determine the conditions of dismissal or to determine that the dismissal should be unconditional under the circumstances, . . . [but it must] ensure that plaintiffs can reinstate suits in American courts if the defendants obstruct jurisdiction in the alternative forum." *Id.* (internal citations omitted); *see also Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 908 (5th Cir. 1997).

Here, Defendants stipulated to English jurisdiction, and the district court provided for Plaintiffs' ability to reinstate suit in the U.S. forum "if the courts of England refuse to accept jurisdiction." *In re BP*, 2011 WL 4345209, at *16. Because ensuring return jurisdiction to American courts is the only formal requirement in this circuit, *see Baris*, 932 F.2d at 1551, we conclude that the district court did not abuse its discretion in applying only these conditions to the FNC dismissal.

## C.     Denial of Rule 59(e) Motion

Following the district court's order granting FNC dismissal, Plaintiffs moved to alter or amend the order under Rule 59(e) by seeking to add five conditions to the dismissal. The district court denied the motion.

"[A] district court has considerable discretion in deciding whether to reopen a case under Rule 59(e)." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). Still, the discretion is not limitless, and "[t]he court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Id.* We review the district court's denial of a Rule 59(e) motion for abuse of discretion. *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

"[A] motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (internal quotation marks omitted). It also may be appropriate "when there has been an intervening change in the controlling law." *Schiller*, 342 F.3d at 567. As NOERS did not offer any justification for the use of this extraordinary remedy, the district court's refusal to grant the motion was not an abuse of discretion.

Because the district court did not abuse its discretion in the challenged rulings, we AFFIRM.