# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50042

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2014

Lyle W. Cayce
Clerk

INDUSOFT, INCORPORATED, a Texas Corporation; INDUSOFT
BUSINESS DEVELOPMENT, INCORPORATED, a Texas Corporation;
INDUSOFT DESENVOLVIMENTO DE SOFTWARE, LIMITADA, formerly
known as InduSoft do Brasil, Limitada, a Brazilian Corporation,

> Plaintiffs - Appellants Cross-
> Appellees

v.

MARCOS V. TACCOLINI, an Individual; TATSOFT, L.L.C., a Delaware
limited liability company,

> Defendants - Appellees Cross-
> Appellants

TATSOFT INFORMATICA, LIMITADA, a Brazilian entity; ERIC VIGIANI,
an individual; DOES 1-20,

> Defendants - Appellees

---

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:12-CV-52

---

Before OWEN, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-50042

This appeal concerns whether the district court properly dismissed the lawsuit on *forum non conveniens* grounds.  The plaintiffs appeal the dismissal of their claims; two defendants cross-appeal the dismissal of their counterclaims.  We AFFIRM the dismissal of the plaintiffs' claims, but REVERSE and REMAND for further proceedings on the counterclaims.

FACTS AND PROCEDURAL HISTORY

Plaintiff InduSoft, Inc. is a software company incorporated in Texas and headquartered in Austin.  Its affiliate companies, who are also plaintiffs, are InduSoft Business Development, Inc., a domestic company incorporated in Texas, and InduSoft Desenvolvimento De Software, Ltda., a foreign company incorporated in Sao Paulo, Brazil (collectively, "InduSoft").  InduSoft's flagship product is Web Studio.[1]

In 1997, InduSoft contracted with Unisoft Systems, Ltda., a Brazilian company owned by Marcos Taccolini, to write software.  Two years later, InduSoft acquired Unisoft in exchange for giving Taccolini a 50% ownership interest in the company.  Taccolini became InduSoft's Chief Technology Officer and worked at InduSoft's headquarters in Austin.  In 2008, Taccolini became involved in an ownership dispute with the other InduSoft owners and sued to dissolve the company in Ohio state court.  InduSoft and Taccolini resolved that dispute by settlement agreement in early 2009.  As a part of the agreement, Taccolini surrendered his rights to InduSoft's proprietary information, including Web Studio's source codes, in exchange for compensation.

---

[1] The function of Web Studio is not at issue on appeal, but InduSoft states that Web Studio allows customers to "convert their personal computers, web browsers, cell phone and other devices into industrial testing, automation, and measurement devices, taking full advantage of internet connectivity."

No. 13-50042

Less than a month after settlement, Taccolini founded Tatsoft, LLC, which is incorporated in Delaware with its principal place of business in Houston, Texas. A related company, Tatsoft Informatica, Ltda., also began to operate in Sao Paulo, Brazil. Roberto Vigiani, Jr., a former InduSoft software designer, is the majority owner of Informatica. Shortly thereafter, Taccolini (or one of the Tatsoft entities) hired Roberto Vigiani's brother, Eric Vigiani, who was also a long-time InduSoft software engineer. In 2010, Tatsoft launched its own software product called Factory Studio, which performs a similar function as InduSoft's Web Studio.[2]

InduSoft alleges that in 2011 it received a tip from Glaucia Tavares Vasconcelos, an Informatica employee, that Eric Vigiani, while he was still an InduSoft employee, stole Web Studio's source codes at the direction of Taccolini and Roberto Vigiani. InduSoft commenced a provisional legal action in Sao Paulo, against Taccolini, Informatica, Eric Vigiani, and Roberto Vigiani. Tatsoft was not named in this action. As a result of this action, Brazilian law enforcement officers searched Informatica offices and the home of Fernando Rosa, one of its employees, looking for data on any of its servers to support InduSoft's allegations that Eric Vigiani stole Web Studio's source code. They found enough information to substantiate InduSoft's infringement claims. As a result, InduSoft was granted an injunction related to its claims of copyright infringement. The provisional action was dismissed, and InduSoft instituted a related, civil action against the same defendants. That second action is ongoing.

---

[2] Unlike the allegedly "out-of-date" Web Studio, the defendants contend that Factory Studio is a "highly evolved design solution for process automation applications, including real-time data acquisition, database population, and access, reporting, scripting, communication drivers, and graphical displays."

No. 13-50042

InduSoft then filed a third civil suit, namely, the suit before us, against Taccolini, Vigiani, Tatsoft, and Informatica in the United States District Court for the Southern District of Texas.  Various state and federal law claims were made.  Taccolini and Tatsoft answered the first amended complaint and filed counterclaims.  Eric Vigiani and Informatica, however, did not answer or file counterclaims.  Instead, they moved to dismiss the suit based on the doctrine of *forum non conveniens*.  The district court granted their motion, dismissing without prejudice all claims in InduSoft's complaint.  The district court also dismissed *sua sponte* Taccolini and Tatsoft's counterclaims against InduSoft on the same grounds, despite its awareness that Taccolini and Tatsoft did not join the other defendants' motion to dismiss.

InduSoft timely appealed the district court's dismissal, raising four issues with the district court's *forum non conveniens* analysis.  Taccolini and Tatsoft cross-appealed the dismissal of its counterclaims, arguing that the district court erred by dismissing their counterclaims without providing notice that those claims were in jeopardy of dismissal.

## DISCUSSION

A district court's *forum non conveniens* determination "may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

To dismiss a case on *forum non conveniens* grounds, a court must first find that an adequate and available alternative forum exists for the parties to litigate their claims.  *Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 211 (5th Cir. 2010).  If such a forum exists, the court weighs a number of public and private interest factors to determine whether the case should be dismissed

4

in favor of that forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). A court, however, does not engage in a straight balancing test; depriving the plaintiff of his chosen forum is an exceptional outcome, only appropriate when the balance is "strongly in favor of the defendant." *Id.* The Supreme Court has made clear that a plaintiff "should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which . . . establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience . . . ." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

I.     *Is Brazil an available and adequate forum?*

We first examine whether the district court erred by finding that Brazil was an available and adequate forum. Alternative-forum analysis requires a court to determine whether "all parties can come within the jurisdiction" of the alternative forum and whether parties will be "deprived of all remedies or treated unfairly, even though they might not enjoy the same benefits as they might receive in an American court." *Saqui*, 595 F.3d at 211-12 (quotation marks and citation omitted). The district court assumed that all parties could come within the jurisdiction of Brazil and relied on the presumption that the substantive law of the foreign forum was adequate.

InduSoft contends that the district court erred by presuming that Brazil was an adequate forum. It argues the district court's application of a presumption violated this principle: "A defendant of course bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum. This burden of persuasion runs to all the elements of the forum non conveniens analysis." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1164 (5th Cir.1987) (en banc) (citations omitted), *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989).

Though defendants must carry the burden of proving an adequate forum, they may rely on a presumption that the foreign forum is adequate. *See DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007); *see also Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 392 (5th Cir. 1983) (applying this presumption), *overruled on other grounds by In re Air Crash Disaster*, 821 F.2d 1147. A plaintiff may overcome that presumption by making a contrary showing. *DTEX*, 508 F.3d at 796. InduSoft did not show that the law of Brazil was inadequate. Moreover, the fact that the parties, with the exception of Tatsoft, currently are engaged in litigation in Brazil indicates that Brazil is an available forum. The district court did not err in concluding that Brazil was a suitable alternative forum.

II.    *Did the district court properly weigh the private interest factors?*

Private interest factors include: "(1) the ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) any other practical factors that make trial expeditious and inexpensive." *Saqui*, 595 F.3d at 213. Focusing primarily on the ease of access to the evidence and the availability of compulsory process, the district court found that "viewed as a whole," the private-interest factors favored having the suit in Brazil.

As for accessibility of the evidence, some evidence related to this dispute is in the United States, while other evidence is in Brazil. The district court found that the practical difficulties associated with ensuring the evidence in Brazil was available in the United States weighed in favor of the foreign forum. InduSoft disputes this finding, claiming that the "defendant-appellants still have possession of the original hard drives and can produce duplicate copies if anyone needs access to the raw data retrieved." The defendants deny this

assertion, claiming that Brazilian authorities currently possess the servers containing the relevant data and that they will be unable to recover them "in all likelihood." Given the deferential standard of review on this issue of fact, we cannot conclude that the district court abused its discretion in weighing the ease of access factor slightly in favor of the foreign forum.

The district court also weighed the availability of compulsory process in favor of Brazil. That was error. Vasconcelos, the one witness mentioned by the district court as potentially subject to compulsory process, cannot be a reason to favor the foreign forum because she, as InduSoft's primary informant, is a willing witness. "When no witness' unwillingness has been alleged or shown, a district court should not attach much weight to the compulsory process factor." *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006). The defendants' counterargument, which centers on the citizenship or residence of the parties, is unpersuasive. Whether one party may incur greater costs and fees is a separate private-interest factor, and the district court correctly viewed this factor to favor neither party, concluding that "neither forum is ideal for all parties, and some inconvenience is unavoidable."

Regardless of this narrow disagreement on compulsory process, the more important consideration is that the district court found that the private interest factors weighed only slightly in favor of the foreign forum. This court typically affirms dismissals only when the balance strongly favors the dismissal. *See DTEX*, 508 F.3d at 794-95; *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1381 (5th Cir. 1988). The insubstantial weight of these factors, even with the factor of the availability of compulsory process counted in favor of the foreign forum, alone does not justify a finding that the plaintiffs' claims should be dismissed on *forum non conveniens* grounds.

*III.    Did the district court properly weigh the public interest factors?*

Both parties make a modest attempt to show how the public interest factors favor their preferred forum. Public interest factors include:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Saqui*, 595 F.3d at 214. The district court found that the public interest factors were evenly balanced.

The parties appear to argue that the country whose copyright law governs their infringement claims has a greater public interest in hosting the dispute. Whether the United States copyright laws are applied, however, bears on the private interest of the litigants, not the interests of the public, because United States copyright laws "are designed to protect the property rights of copyright owners." *See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 704 (9th Cir. 1995) (citation omitted). Which law governs could pertain to the conflict of law factor. We discern no conflict arising out of InduSoft's copyright infringement claims because both Brazil and the United States are signatories of the Universal Copyright Convention and the Berne Convention for the Protection of Literary and Artistic Works. Those agreements commit each country to apply foreign copyright law when required. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 153 F.3d 82, 90-91 (2d Cir. 1998).

The parties also briefly discuss the relevance of the fact that InduSoft has claims arising out of Vigiani's employment in Texas. Neither party explains why the state or federal government has an interest in adjudicating the employment-related claims, and relatedly, whether a court in Brazil would

or could apply state or federal law.  As for the remaining public-interest factors, neither party offers a compelling argument that the district court erred by declaring these factors neutral.  The public interest factors did not appear to affect the outcome of the district court's decision, and they do not affect the outcome of this appeal.

*IV.  Did the district court ignore the heightened burdens required for* forum non conveniens *dismissal?*

Finally, InduSoft argues that the district court either misunderstood or misapplied the correct standard for dismissing a case for *forum non conveniens*. It asserts that the district court's analysis was wrong for four reasons: it failed to find that litigation in Texas district court would be vexatious or oppressive; it erred in rejecting its choice of home forum; it failed to require any evidence to support the dismissal; and it gave improper weight to the litigation in Brazil.

These arguments can be summarized by saying that the district court did not give the deference typically afforded the plaintiff in a *forum non conveniens* case.  The Supreme Court, though, has held that a plaintiff's choice is entitled to less deference when it does not file in its home forum.  *Piper Aircraft Co.*, 454 U.S. at 255-56.  Though the third suit was filed in Indusoft's home forum, the first two were not.  That lessened deference flows from the fact that convenience is the central focus of the forum analysis:

> When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Id.*  A plaintiff's choice of a foreign forum suggests that instead of convenience, it is favorable law that the plaintiff seeks.  Any "deference accorded a plaintiff's

choice of forum has never been intended to guarantee that the plaintiff will be able to select the law that will govern the case." *Id.* at 256 n.24.

Instead of relying on the traditional private and public interest factors, the district court dismissed InduSoft's claims based largely on the plaintiff's decision to initiate litigation in a foreign forum before filing suit in its home forum.  It acknowledged that "not all considerations strongly point to the conclusion that this litigation should be in Brazil."  Instead, the district court focused on InduSoft's decision to initiate litigation in Brazil.  It reasoned that "[t]o allow InduSoft to litigate related issues in two different forums against the same Defendants gives rise to a host of practical inconveniences to the parties and their witnesses and would require all parties to incur inordinate legal expenses."  It further expressed its concern over "the substantial risk of inconsistent and conflicting outcomes in each forum."  Because of these two considerations, it concluded "that InduSoft's choice of this forum is not entitled to substantial deference."

Whether the district court's decision not to give substantial deference to InduSoft's choosing Texas for this suit was warranted by InduSoft's voluntary litigation in Brazil is a key issue in this appeal.  Convenience, as *Piper* indicates, is the linchpin in the analysis.  Filing suit first in Brazil does indicate convenience in Brazil at least on the claims brought there.  On the other hand, practical difficulties created by parallel or duplicative litigation, and the costs and expenses associated with having to litigate in two forums, comfortably fit within the traditional private interest inquiry. We agree with the Fourth Circuit that "the mere presence of parallel litigation bears only marginally on the touchstone of the *forum non conveniens* analysis; namely, convenience." *SAS Inst., Inc. v. World Programming Ltd.*, 468 F. App'x 264, 266 (4th Cir. 2012); *see also Adelson v. Hananel*, 510 F.3d 43, 53-54 (1st Cir. 2007).

No. 13-50042

The defendants cite two cases to support their assertion that the district court did not err in affording the litigation in Brazil special weight.  One case states that the court should be mindful of the realities of international commerce in conducting its *forum non conveniens* analysis.  *DTEX*, 508 F.3d at 795 (quoting *Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990)).  We do not read into that statement that these realities alter the traditional analysis.  The realities in *DTEX* were that the events giving rise to the litigation occurred wholly in a foreign state and the defendant had only a minimal presence in the plaintiff's chosen domestic forum — a presence that was unrelated to the events that sparked the litigation.  DTEX, 508 F.3d at 788-92.  The court held that both the public and private interest factors strongly favored dismissal.  *Id.* at 804.

Another case cited by the defendants is similar to *DTEX*.  *See U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749 (7th Cir. 2008).  Both the plaintiff and defendant in *U.S.O.* conducted extensive business in the foreign forum, and the litigation arose out of conduct that occurred in that forum.  *Id.* at 750.  The plaintiff, a Delaware corporation, initiated litigation in both the foreign and domestic forum.  *Id.*  The Seventh Circuit wrote briefly about the concerns raised by the duplicate litigation, including the potential overlap between the doctrine of *forum non conveniens* and the doctrine of abstention.  *See id.* at 750-51.  The defendant did not urge abstention, though, and neither does the defendant here.  Therefore the plaintiff's duplicative lawsuit in the foreign forum did not play a particularly important role in the court's analysis.  *See id.*  Instead, the court held that the nexus between the litigants' voluntary international business activities and the events giving rise to the litigation created strong enough private and public interests in the foreign forum to overcome the home-forum presumption.  *See id.* at 755.

11

No. 13-50042

These cases are not an exact fit for what is before us. InduSoft's primary business operations are in Texas, and the software at issue in this litigation was developed there. Both Taccolini and Eric Vigiani lived in Texas for some time, worked for InduSoft at its Texas headquarters, and signed contracts with the domestic company. In addition, the business relationship between Taccolini, the purported instigator of the alleged theft, and InduSoft has a long and turbulent history, which has been the subject of litigation in Ohio state court. There is a settlement agreement related to that litigation which both InduSoft and the counterclaimants wish to have interpreted and enforced. Moreover, the complaint includes allegations that certain wrongs, including the actual theft of the source code, occurred in Texas. Consequently, a substantial connection has been alleged between InduSoft and its chosen forum in Texas.

Nevertheless, there does appear to be some overlap between the claims InduSoft has asserted in Brazil and the claims asserted here. The parties dispute the exact nature of the litigation in Brazil, and it is difficult to determine from the record the extent of the overlap between the two cases. But we do know that InduSoft is pursuing its copyright infringement claims in Brazil and also seeking damages for that action, which are necessarily related to the defendants' alleged theft and use of the software. Further, those claims appear to be closely tied to the settlement agreement, which provides that both Sao Paulo and Austin are appropriate jurisdictions to resolve any disputes arising out of the agreement.

The district court, with a few exceptions we noted, made proper determinations of the public and private interest factors. The district court properly gave less weight to the plaintiff's choice of forum inasmuch as a foreign forum was chosen first, indicating convenience was not the central

12

motive.   Our review reveals there are considerations under *forum non conveniens* analysis that could have justified allowing this litigation to proceed in Texas.  Still, we are mindful of the Supreme Court's directive:

> The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.

*Piper*, 454 U.S. at 257.  We conclude that there was no clear abuse of discretion when the district court dismissed Indusoft's claims.

As for the counterclaims, Taccolini and Tatsoft are correct that the district court should have given them notice that their counterclaims were in jeopardy of dismissal.  We conclude that the court's *sua sponte* dismissal of their counterclaims was error.  *See Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007).   We point out, however, the apparent inconsistency of Taccolini and Tatsoft's positions on appeal.  They seemingly argue that it would be overly burdensome for them to defend on two different fronts but appear unconcerned about the costs and expenses required to prosecute their counterclaims on one front and defend on another. Allowing Taccolini and Tatsoft to proceed in this manner could place InduSoft in the same vexatious position that the district court determined equitably warranted dismissal.  This apparent contradiction may be the reason the district court dismissed the counterclaims without discussion.

Counsel for Taccolini and Tatsoft asserted at oral argument that the counterclaims strictly concern whether Taccolini was given adequate consideration for InduSoft's purchase of the software.  It is unclear whether the contract claim described by counsel can be meaningfully divorced from the other claims in this case.  Should Taccolini and Tatsoft prevail on this claim, it

13

No. 13-50042

appears they would effectively undermine InduSoft's purchase and ownership of the software, the settlement agreement that relates to the ownership of the software, and even cast significant doubt on defendants' alleged copyright infringement claims.

We also note InduSoft's statement that Tatsoft is not a party to the litigation in Brazil.  Dismissal is appropriate only when all parties can come within the alternative forum.  *Saqui*, 595 F.3d at 211.  Tatsoft has stated in briefing that it will willingly submit to the jurisdiction of the Sao Paulo court.

Because the district court did not allow Taccolini and Tatsoft to address the possible dismissal of their counterclaims, we reverse and remand for further proceedings consistent with this opinion.[3]

AFFIRMED in part and REVERSED and REMANDED in part.

---

[3] The defendants' counsel suggested that his clients would be able to file their counterclaims in Brazil, and they only appealed the dismissal of the counterclaims after InduSoft appealed the dismissal of its claims.  The defendants on remand can inform the district court whether they still wish to contest the dismissal of the counterclaims.